| AO 10<br>Rev. 1/2013 | FINANCIAL DISCLOSURE REPORT<br>FOR CALENDAR YEAR 2013 | Report Required by the Ethics<br>in Government Act of 1978<br>(5 U.S.C. app. §§ 101-111) |
|---|---|---|

| 1. Person Reporting (last name, first, middle initial)<br><br>CALLAWAY, Stephen V. | 2. Court or Organization<br><br>U.S. Bankruptcy Court | | 3. Date of Report<br><br>4/11/2014 |
|---|---|---|---|
| 4. Title (Article III judges indicate active or senior status;<br>    magistrate judges indicate full- or part-time)<br><br>Bankruptcy Judge | 5a. Report Type (check appropriate type)<br><br>☐ Nomination        Date<br>☐ Initial    ☑ Annual      ☐ Final | | 6. Reporting Period<br><br>01/01/2013<br>to<br>12/31/2013 |
| | 5b. ☐    Amended Report | | |
| 7. Chambers or Office Address<br><br>300 Fannin Street, Suite 4400<br>Shreveport LA 71101-3088 | | | |

**IMPORTANT NOTES:** *The instructions accompanying this form must be followed. Complete all parts,*
*checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Independent Executor (01/08/2013 - 06/13/2013) | Succession of Kenneth Graham Burgess, Jr. (SEE VIII Additional Information or Explanation) |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☑ NONE *(No reportable agreements.)*

| | DATE | PARTIES AND TERMS |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

| Name of Person Reporting | Date of Report |
|---|---|
| CALLAWAY, Stephen V. | 4/11/2014 |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☑ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☐ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | 2013 | Broadmoor Presbyterian Church - Director - Christian Education |
| 2. | | |
| 3. | | |
| 4. | | |

## IV. REIMBURSEMENTS -- *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | Louisiana State University Law School | 10-23-2013 to 10-25-2013 | Baton Rouge LA | Bankruptcy Seminar | Food, Lodging and Mileage |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |

| Name of Person Reporting | Date of Report |
|---|---|
| CALLAWAY, Stephen V. | 4/11/2014 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑ NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

| Name of Person Reporting | Date of Report |
|---|---|
| CALLAWAY, Stephen V. | 4/11/2014 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34–60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1. Citibank SD Bank Dep. Pro | A | Interest | J | T | | | | | |
| 2. One Whole Life Ins. Policy-Trans America Occidental Life | C | Interest | M | T | | | | | |
| 3. McDonalds Corp (MCD) | A | Dividend | K | T | | | | | |
| 4. Wal-Mart Stores, Inc. (WMT) | A | Dividend | J | T | | | | | |
| 5. Centerpoint Energy, Inc. (CNP) | A | Dividend | K | T | | | | | |
| 6. Bossier Federal Credit Untion (VAC merged into Bossier) | A | Interest | K | T | | | | | |
| 7. American Express Savings Account | A | Interest | L | T | | | | | |
| 8. | | | | | | | | | |
| 9. | | | | | | | | | |
| 10. | | | | | | | | | |
| 11. | | | | | | | | | |
| 12. | | | | | | | | | |
| 13. | | | | | | | | | |
| 14. | | | | | | | | | |
| 15. | | | | | | | | | |
| 16. | | | | | | | | | |
| 17. | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| Name of Person Reporting | Date of Report |
|---|---|
| CALLAWAY, Stephen V. | 4/11/2014 |

# VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

I served from January 8, 2013 to June 13, 2013 as the Independent Executor of the Succession of Kenneth Graham Burgess, Jr.

Mr. Burgess was not a member of my family and we were not related by blood, adoption or marriage. Mr. Burgess was, nonethless, treated as a member of my family. I worked with Mr. Burgess on a regular basis from 1976 through 1986. During that period, Mr. Burgess was employed by a bank that I represented and did a significant amount of work for and with Mr. Burgess. Over the years we became close friends. I was the best man at his wedding and we remained close friends after he went to work for the FDIC and I went to work for the U.S. Courts in 1986. We socialized together and visited in each other's homes on a regular basis while he was still in Shreveport and after the FDIC moved Mr. Burgess and his family to Atlanta, Georgia.

Ultimately Mr. Burgess was transferred back to Shreveport, Louisiana, and our friendship continued. Around 2008, Mr. Burgess and his wife were informed by their physicians that Mrs. Burgess had ALS and he had lung cancer. Mrs. Burgess' decline was very rapid and it soon became apparent that Mr. Burgess could not care for his wife because of the debilitations he suffered from the agressive treatment of his lung cancer through radiation and chemo therapy. Ultimately Mrs. Burgess was required to leave Shreveport, Louisiana, and move to Atlanta, Georgia, to be cared for by her adult daughter. Prior to her leaving, she and her husband agreed to terminate the community so that she would have funds required for her care.

After Mrs. Burgess moved to Atlanta, Georgia, Mr. Burgess commenced a second and very agressive treatment of his lung cancer, and many of his friends, including myself, were tasked with caring for him during the periods after the radiation treatments. The ALS disease Mrs. Burgess suffered from caused her demise on August 18, 2010. Mr. Burgess died on November 15, 2012, after a four year battle with lung cancer.

Approximately ten days before Mr. Burgess passed away I was at his home visiting him. We knew that his end was near and we tried to spend some quality time together. Mr. Burgess and his late wife were cat lovers and he had at that time three cats. During the course of our conversation, I asked Mr. Burgess what was going to happen with all the cats after he passed away. Mr. Burgess' response to that question was: "Callaway, I will soon be gone and I'm not going to worry about those cats; besides, I have appointed you Executor in my Will and that will be your problem." That was the first I knew of that testamentary appointment and when I asked why he had not appointed his daughter, the orthodontist, his response was that although he believed his children, step-child and niece all got along, that some of the bequests he had made in his Will may cause some friction and he wanted me to handle the matters.

During his final days, all of the Legatees under Mr. Burgess' Will came to Shreveport except his son, who was in touch. I informed the Legatees that I felt Mr. Burgess' succession could be completed without an Executor qualifying and that if they were all in agreement with his Will that same could be done fairly quickl.y but that they needed a lawyer. I recommended a lawyer for them, one of my ex-partners, Mr. Glenn E. Walker. Mr. Burgess' Will and information on all his assets that would go through the succession were delivered to Mr. Walker. The main asset of the Succession of Mr. Burgess was his home. The home was received by Mr. Burgess when he and his wife partitioned their community. The Deed conveying the property from Mrs. to Mr. had an incorrect description of the real property. This title defect was discovered by Mr. Walker.

Mr. Walker's recommendation for the quickest and least costly method for correcting the title problem was to have me qualify as the executor (qualified January 8, 2013) and as the executor file an intervening petition in the lawsuit that had been required to partition the communithy and request in that peition that the State Court issue an order amending the description of the real property. This was done and I appeared for Mr. Burgess' estate and Mrs. Burgess' daughter (Mr. Burgess' step-daughter and Legatee) appeared as the sole heir of her late mother. The title to the real property was duly corrected in this manner. Subsequent to qualifying as executor, I closed two bank accounts, cashed some U.S. Savings Bonds and desposited those funds into a succession bank account, conveyed the decedants' cars to Legatees as a portion of their legacy and joined with the Legatees in a Petition for Possession and Discharge of Executor. The Judgment of Possession and Discharge of Executor Judgment was rendered on June 13, 2013, and Mr. Walker disbursed the proceeds from the succession bank account per the Judgment and same was recorded as the conveyance of the home. I did not request, nor did I receive, any compensation for my services. The Legatees all honored the Will without hesitation and there were no conflicts that I was required to resolve. I served from January 8, 2013 to June 13, 2013.

I was aware of Canon 4(E) and intially believed that an Executor would not be required. It was only after the title problem was discovered and the solution disclosed by succession counsel that the need for an Executor arose. At that time it was apparent that all the Legatees under the Will were in accord and agreed to the Will and that the succession could be concluded in a timely fashion after the property description was corrected by Court Order. If that had not been the case, I would not have qualified as Executor.

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: **s/ Stephen V. CALLAWAY**

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544